Slip Op. 20-48

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| COALITION FOR FAIR TRADE IN GARLIC, | |
| Plaintiff, | |
| v. | |
| UNITED STATES, | Before: Mark A. Barnett, Judge |
| Defendant, | Court No. 18-00137 |
| and | |
| HARMONI INTERNATIONAL SPICE, INC., ET AL., | |
| Defendant-Intervenors. | |

## OPINION AND ORDER

[Remanding the U.S. Department of Commerce's final results and partial rescission of the twenty-second antidumping duty administrative review.]

Dated: April 14, 2020

Brodie H. Smith and Anthony L. Lanza, Lanza and Smith PLC, of Irvine, CA, for Plaintiff Coalition for Fair Trade in Garlic.

Meen Geu Oh, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director.  Of counsel on the brief was Emma T. Hunter, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Michael J. Coursey, John M. Herrmann, and Joshua R. Morey, Kelley Drye & Warren LLP, of Washington, DC, for Defendant-Intervenors Fresh Garlic Producers Association and its Individual Members.

Bruce M. Mitchell, Alan G. Lebowitz, Ned H. Marshak, Jordan C. Kahn, and Jamie L. Maguire, Grunfeld Desiderio Lebowitz Silverman & Klestadt LLP, of New York, NY, for Defendant-Intervenors Zhengzhou Harmoni Spice Co., Ltd. and Harmoni International Spice Inc.

Barnett, Judge:  In this action, Plaintiff Coalition for Fair Trade in Garlic ("the CFTG") moves for judgment on the agency record pursuant to U.S. Court of International Trade ("CIT") Rule 56.2 in connection with the U.S. Department of Commerce's ("Commerce" or "the agency") final results and partial rescission of the 22nd administrative review ("AR22") of the antidumping duty order on fresh garlic from the People's Republic of China ("China" or "the PRC").[1]  *See Fresh Garlic From the People's Republic of China*, 83 Fed. Reg. 27,949 (Dep't Commerce June 15, 2018) (final results and partial rescission of the 22nd antidumping duty admin. review and final result and rescission, in part, of the new shipper reviews; 2015–2016) ("*Final Results*"), ECF No. 24-2, and accompanying Issues and Decision Mem., A-570-831 (June 8, 2018) ("I&D Mem."), ECF No. 24-3.[2]

---

[1] The court previously consolidated this action with *Shandong Jinxiang Zhengyang Import & Export Co., Ltd. et al. v. United States, et al.*, Court No. 18-cv-00156, which addressed a challenge to the same agency determination at issue in this case.  The court later concluded that factual and legal distinctions merited severing the cases.  Order (Feb. 10, 2020), ECF No. 97.  The court further denied the motion for judgment on the agency record filed by the plaintiffs in the severed case.  *Shandong Jinxiang Zhengyang Imp. & Exp. Co. v. United States*, Slip Op. 20-18, 2020 WL 710075 (CIT Feb. 11, 2020).  Accordingly, this opinion solely addresses claims raised by the CFTG.
[2] The administrative record is divided into a Public Administrative Record ("PR"), ECF No. 24-4, and a Confidential Administrative Record ("CR"), ECF Nos. 24-5, 24-6.  Parties submitted joint appendices containing record documents cited in their briefs.  See Public J.A. ("PJA"), ECF Nos. 61 (Vol. I), 62 (Vol. II), 63 (Vol. III), 64 (Vol. IV), 65 (Vol. V); Confidential J.A. ("CJA"), ECF No. 66.  The court references the confidential version of the relevant record documents, if applicable, throughout this opinion.

The CFTG raises two challenges to Commerce's decision to rescind its review of certain Chinese garlic producers and exporters.  The CFTG first contends that Commerce's regulation governing the partial rescission of an administrative review upon the withdrawal of request to review a particular producer or exporter, 19 C.F.R. § 351.213(d)(1), violates the statute governing the periodic review of antidumping and countervailable subsidy duties, 19 U.S.C. § 1675(a)(1)–(2)(2012).[3]  Mot. of Pls. [CFTG] and its Individual Members for J. on the Agency R. and accompanying Mem. in Supp. ("CFTG's Mem.") at 25–35, ECF No. 38.  The CFTG next contends that Commerce erred in concluding that its members lacked standing to request a review of Defendant-Intervenor Zhengzhou Harmoni Spice Co., Ltd.  *Id.* at 35–49.  Defendant United States ("the Government") and Defendant-Intervenors[4] argue that Commerce's partial rescission of the administrative review was lawful and supported by substantial evidence.  Def.'s Corrected Resp. in Opp'n to Pl.'s, Consol. Pls.', and Pl.-Ints.' Rule 56.2 Mots. For J. on the Agency R. ("Gov't's Resp.") at 27–48, ECF No. 74; [FGPA's] Resp. in Opp'n to Pls.' Mot. for J. on the Agency R. ("FGPA's Resp.") at 18–20, ECF No. 47; Def.-Int. Harmoni's Resp. to Pls.' Rule 56.2 Mot. for J. on the Agency R ("Harmoni's Resp.") at 4–27, ECF No. 48.  For the reasons discussed herein, the court

---

[3] All citations to the Tariff Act of 1930, as amended, are to Title 19 of the U.S. Code, and references to the U.S. Code are to the 2012 edition, unless otherwise stated.

[4] Defendant-Intervenors consist of Harmoni International Spice, Inc. and Zhengzhou Harmoni Spice Co., Ltd (together, "Harmoni"), as well as Fresh Garlic Producers Association and its individual members The Garlic Company, Valley Garlic, Christopher Ranch, L.L.C., and Vessey and Company, Inc. (collectively, "the FGPA").

remands for further consideration Commerce's determination based on the CFTG's

second challenge and declines to reach the CFTG's first challenge.

BACKGROUND

In 1994, Commerce issued an order imposing antidumping duties on fresh garlic

from China.  *See Fresh Garlic From the People's Republic of China*, 59 Fed. Reg.

59,209 (Dep't Commerce Nov. 16, 1994) (Order).  On November 4, 2016, Commerce

published a notice informing interested parties of the opportunity to request an

administrative review of the Order for the period of review November 1, 2015, through

October 31, 2016.  *Antidumping or Countervailing Duty Order, Finding, or Suspended

Investigation; Opportunity To Request Admin. Review*, 81 Fed. Reg. 76,920, 76,921

(Dep't Commerce Nov. 4, 2016), PR 2, PJA Vol. I.  Harmoni requested to be included in

the review.  Request for Admin. Review of the Antidumping Duty Order on Fresh Garlic

from the [PRC] (Nov. 7, 2016), PR 1, PJA Vol. I.  The CFTG and the FGPA each

requested Commerce to include Harmoni, among others, in the review.[5]  CFTG's

Request for 22nd Antidumping Admin. Review of Fresh Garlic from the [PRC]  (Nov. 28,

2016) ("CFTG Req."), Ex. at 1, PR 8, PJA Vol. I; Pet'rs' Requests for Admin. Review

(Nov. 30, 2016) at 6, PR 12, PJA Vol. I.  In its review request, the CFTG characterized

itself as "an alliance of domestic garlic producers."  CFTG Req. at 1.[6]  However, the

---

[5] The CFTG requested a review of "all producers and exporters of fresh garlic exported from the [PRC] and imported into the United States during the POR," CFTG Req. at 2, and appended a list of known exporters to the request, *id.*, Ex. at 1.

[6] At the time it submitted the request, the CFTG's membership consisted of Stanley Crawford, owner and operator of El Bosque Farm of Dixon, New Mexico; Avrum Katz, owner and operator of Boxcar Farm of Peñasco, New Mexico; Alex Pino, owner and operator of Revolution Farm of Santa Fe, New Mexico; and Suzanne Sanford, owner

Court No. 18-00137                                                                          Page 5

CFTG claimed interested party status pursuant to 19 U.S.C. § 1677(9)(C), applicable to

individual producers,[7] *and* 19 C.F.R. § 351.102(b)(29)(vii), applicable to associations.[8]

*Id.* at 2.

On January 13, 2017, Commerce initiated AR22.  *See Initiation of Antidumping*

*and Countervailing Duty Admin. Reviews*, 82 Fed. Reg. 4,294, 4,296–97(Dep't

Commerce Jan. 13, 2017), PR 22, PJA Vol. I.  The review covered 35 exporters and

producers.  Selection of Respondents for Individual Examination (Mar. 7, 2017) at 3, PR

82, PJA Vol. I.  After finding that it would be impracticable to review every named

exporter or producer, Commerce selected Harmoni as one of two mandatory

respondents in the review.  *Id*. at 4.

On April 6, 2017, Harmoni placed on the AR22 record its case and rebuttal briefs

filed in the twenty-first administrative review of the antidumping duty order on fresh

garlic from China ("AR21").  *See* Harmoni Placing [AR]21 Case and Rebuttal Brs. On

the Admin. R. in [AR]22 (Apr. 6, 2017) ("Harmoni's AR21 Brs."), CR 19–26, CJA.  The

briefs consisted of information and documents Harmoni had relied on to impugn the

and operator of Sanford Farm of Costilla, New Mexico.  CFTG Req. at 1 n.1.
Thereafter, Mr. Katz and Mr. Pino withdrew from the CFTG and Melinda Bateman joined
the CFTG.  Withdrawal of Avrum Katz from the [CFTG] (Dec. 14, 2016), PR 15, PJA
Vol. I; Withdrawal of Alex Pino from the [CFTG] (Feb. 15, 2017), PR 75, PJA Vol. I;
Notice of Appearance and Appl. for Admin. Protective Order (APO) Filed by Counsel on
Behalf of CFTG (Jan. 18, 2017) at 1 n.1, PR 19, PJA Vol. I (informing Commerce of the
addition of Ms. Bateman to the CFTG).
[7] Subsection 1677(9)(C) defines "interested party" as "a manufacturer, producer, or
wholesaler in the United States of a domestic like product."  19 U.S.C. § 1677(9)(C).
[8] That provision defines "interested party" as "[a] trade or business association a
majority of whose members manufacture, produce, or wholesale a domestic like product
in the United States."  19 C.F.R. § 351.102(b)(29)(vii); *cf.* 19 U.S.C. § 1677(9)(E).

credibility of the domestic coalition that requested Harmoni to be included in AR21 and

encourage Commerce to find the request invalid *ab initio*.  *See generally id*.[9]  Soon

thereafter, Harmoni and the FGPA withdrew their requests for Harmoni to be included in

the review.  Harmoni Withdrawal of Review Request (Apr. 13, 2017), PR 123, PJA Vol.

I; Pet'rs' Withdrawal of Certain Requests for Admin. Review (Apr. 13, 2017) at 2, PR

124, PJA Vol. I.

   On June 27, 2017, Commerce issued questions to the CFTG to assess whether

its members qualify as domestic interested parties eligible to request an administrative

review.  Ltr. From Dep't Commerce to Hume & Assoc. Pertaining to CFTG

Questionnaire (June 27, 2017), PR 203, PJA Vol. III.[10]  The CFTG responded on

August 3, 2017.  CFTG Resubmission of Resp. to the June 27, 2017 [Dep't Commerce]

---

[9] Commerce's determination to rescind its review of Harmoni in AR21 was the subject of the court's decision in *New Mexico Garlic Growers Coalition v. United States* ("*NMGGC*"), 42 CIT, ___, ___, 352 F. Supp. 3d 1281, 1298–1312 (2018).  In *NMGGC*, the court sustained Commerce's regulation, 19 C.F.R. § 351.213(d)(1), pursuant to which the agency partially rescinds a review with respect to specific companies when all requests for a review of that company have been withdrawn (or otherwise deemed invalid *ab initio*).  *See NMGGC*, 352 F. Supp. 3d at 1302–06.  The court further sustained Commerce's factual findings and credibility determinations with regard to the CFTG's predecessor, the New Mexico Garlic Growers Coalition ("the Coalition"); the agency's corresponding decision that the Coalition's request for a review of Harmoni was invalid; and its subsequent decision to rescind Harmoni's review.  *Id.* at 1306–12. On appeal, the U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") affirmed Commerce's decision to rescind Harmoni's review in connection with the Coalition's review request.  *N.M. Garlic Growers Coal. v. United States* ("*NMGGC CAFC*"), No. 2019-1404, 2020 WL 1482402, at *10–12 (Fed. Cir. Mar. 27, 2020).  The appellate court declined to address the Coalition's challenge to Commerce's regulation, finding instead that the Coalition lacked standing to bring the issue before the court.  *Id.* at *12–13.
[10] Pursuant to 19 C.F.R. § 351.213(b)(1), "[e]ach year during the anniversary month of the publication of an antidumping . . . duty order, a domestic interested party . . . may request . . . an administrative review . . . if the requesting person states why the person desires the [agency] to review those particular exporters or producers."

[L]tr. (Aug. 3, 2017) ("CFTG's 8/3/17 Resp."), CR 89–92, CJA.  The CFTG provided

information regarding each of its then-members—Mr. Crawford, Ms. Bateman,[11] and

Ms. Sanford—to demonstrate their status as domestic garlic producers.  *Id.* at 2–3.

While Mr. Crawford and Ms. Bateman provided the requested income tax forms (Form

1040 and Schedule F),[12] Ms. Sanford did not.  *See id.*, Apps. 3, 7, 8.  Ms. Sanford

informed Commerce that because of a "devastating fire" allegedly "on [her] property,"

she "did not file a Schedule F for the 2015 tax year."  *Id.*, App. 12 at 3.  She further

reported requesting an extension to file her 2016 taxes and informed Commerce she

would provide a copy of her 2016 Schedule F after she filed her taxes.  *Id.*   The CFTG

also provided information regarding the "credibility and involvement of [Robert T.]

Hume," counsel for the CFTG in the administrative proceedings.  *Id.* at 3.

On October 13, 2017, Commerce issued a supplemental questionnaire to the

CFTG requesting a copy of Ms. Sanford's request for an extension to file her 2016 taxes

and the income tax forms she ultimately filed.  Request for Further Information (Oct. 13,

2017) ("Commerce 10/13/17 RFI"), PR 269, PJA Vol. III.  The CFTG did not respond by

the October 18, 2017 deadline.  Cmts. on CFTG Request for Ext. of Time to Submit

Suppl. Resp. (Oct. 26, 2017) at 1–2, PR 276, PJA Vol. III.[13]

---

[11] Ms. Bateman was not a member of the CFTG when it filed its review request.  *See
supra* note 6.

[12] Schedule F to Form 1040 details profit and loss information with respect to farming.
*See, e.g.*, CFTG's 8/3/17 Resp., App. 3.

[13] On October 25, 2017, the CFTG requested an extension of the October 18, 2017
deadline.  Request for an Ext. to Respond to the Dep't's Suppl. Questionnaire (Oct. 30,
2017) at 1, PR 279, PJA Vol. III.  Commerce denied the requested extension, explaining
that the CFTG had failed to demonstrate that "extraordinary circumstances" had

Commerce published its preliminary results on December 7, 2017.  *Fresh Garlic From the People's Republic of China*, 82 Fed. Reg. 57,718 (Dep't Commerce Dec. 7, 2017) (prelim. results, prelim. rescission, and final rescission, in part, of the 22nd antidumping duty admin. review and prelim. results of the new shipper reviews; 2015–2016); *see also* Decision Mem. for the Prelim. Results, Prelim. Rescission, and Final Rescission, in Part, of the 2015–2016 Antidumping Duty Admin. Review and Prelim. Results of the New Shipper Reviews (Nov. 28, 2017) ("Prelim. Mem."), PR 315, PJA Vol. IV.  Commerce preliminarily determined that "the CFTG's review request was invalid" because of "material misrepresentations and inconsistencies in the statements made by the CFTG" that rendered "all of [its] submissions . . . unreliable."  Prelim. Mem. at 7.

Commerce explained that "[a]lthough each proceeding is distinct, the fact pattern of the instant administrative review mirrors that of the preceding review, and accordingly, the preceding review provides context to the analysis of the CFTG's standing and credibility."  *Id*. at 8 (footnote citation omitted); *see also id*. at 8–9 (summarizing the agency's findings in AR21).  Commerce reached its conclusion based upon an analysis of the standing of the CFTG members who had submitted the review request; *i.e*., Mr. Katz, Mr. Crawford, Ms. Sanford, and Mr. Pino.  *Id*. at 9 (reasoning that "an interested party . . . must have standing at the time of the review request").  However, because Mr. Katz and Mr. Pino did not respond to Commerce's

---

prevented it from timely seeking the extension.  *Id*. at 1–2 (citing 19 C.F.R. § 351.302(c)).

questionnaires, Commerce's analysis was limited to the responses of Mr. Crawford and

Ms. Sanford.  *Id*. at 13.  Commerce made no findings regarding Ms. Bateman, who

joined the CFTG after it submitted the review request.  *Id*. at 10.

As to Mr. Crawford, Commerce explained that his "credibility is germane to his

claim to have standing in this review."  *Id*. at 11.  Pointing to the evidence originally

submitted in AR21 and refiled in AR22, Commerce "continue[d] to find . . . that Mr.

Crawford's claims of domestic producer status are unreliable and not to be afforded any

weight."  *Id*.  Commerce also found that additional "statements and information

submitted by Mr. Crawford in the instant review cast[] further doubt on his credibility."

*Id*.  In particular, record evidence refuted Mr. Crawford's claim that he "received no

remuneration or equipment gratis during 2015 and 2016."  *Id*. at 11 & n.74 (citing

CFTG's 8/3/17 Resp., App. 5).  Commerce noted that Mr. Hume had acknowledged

making a $50,000 payment to Mr. Crawford in March 2015 in connection with the

twentieth administrative review, *id*. at 11 & n. 71 (citing CFTG's 8/3/17 Resp., App. 16,

¶ 7),[14] and Mr. Crawford "received further remuneration in the form of compensation for

a trip to China in July of 2015."  *Id*. at 11 & n.75 (citing, *inter alia*, Harmoni's AR21 Brs.

generally).

_____

[14] Commerce also noted the existence of a contradiction regarding the source of the
$50,000 payment.  Prelim. Mem. at 11.  While Mr. Hume averred that the "payment was
made from [his] personal bank account and was not reimbursed by any Chinese entity,"
CFTG's 8/3/17 Resp., App. 16, ¶ 7, accounting records belonging to Mr. Hume's law
firm, Hume & Associates LLC, indicated that the payment was made by the firm, Prelim.
Mem. at 11 & n.72 (citing Harmoni's Resp. to Factual Information Submitted by the
CFTG on [Aug. 3, 2017] (Aug. 17, 2017) ("Harmoni's 8/17/17 Rebuttal"), Ex. 37, CR 93–
96, CJA).

As to Ms. Sanford, Commerce found that record evidence refuted her stated reasons for being unable to provide her 2015 tax returns. *Id*. at 12. While a fire occurred in April 2015, it was not on her property located in Costilla, New Mexico, but on a property owned by another individual. *Id*. at 12 & nn.78-79 (citing Harmoni's 8/17/17 Rebuttal, Exs. 23–25). Commerce noted that the deadline for filing 2015 income tax returns was April of 2016, about one year after the fire occurred, and, thus, it was unclear why the fire prevented her from filing her returns. *Id*. at 12. Commerce also noted that Ms. Sanford failed to timely respond to the agency's supplemental questionnaire requesting the extension request and her 2016 tax returns. *Id*. Lastly, Commerce pointed to record evidence refuting her claim that in 2016 she sold garlic at a farmer's market in Taos, New Mexico. *Id*. at 12 & n.83 (citing Harmoni's 8/17/17 Rebuttal, Ex. 27). That evidence consisted of an affidavit prepared by a private investigator who had interviewed the manager of the farmer's market. *See* Harmoni's 8/17/17 Rebuttal, Ex. 27. The investigator stated that, during the interview, the manager informed him that Ms. Sanford was not registered as a current vendor and had not been registered during the manager's four-year tenure. *Id*.

Commerce determined that the "material misrepresentations and inconsistencies" the agency found in Mr. Crawford's and Ms. Sanford's statements "taint[ed] all the statements and information that they [provided]," including the August 3, 2017 questionnaire response in which Mr. Crawford and Ms. Sanford submitted information seeking to establish their status as domestic garlic producers. Prelim. Mem. at 12–13. Commerce thus concluded that neither individual had standing to request an

administrative review pursuant to 19 U.S.C. § 1677(9)(C). *Id*. at 12. While noting that

the CFTG had "invoked language referring to both [individual and associational

standing]" in its review request, *id*. at 10 & n.65,[15] Commerce did not make an explicit

finding as to whether the CFTG had requested the review on behalf of its individual

members or solely as an association. *Id*. at 11. Rather, Commerce found that none of

the requesting members had individual standing and, thus, the CFTG did not have

standing. *Id*. at 12–13; *see also id.* at 10 (explaining that to qualify for associational

standing pursuant to 19 U.S.C. § 1677(9)(E), "a majority of members must have

standing [as individuals] within the meaning of [19 U.S.C. § 1677(9)(C)]"). Commerce

concluded that the CFTG's "review request was invalid *ab initio*" and preliminarily

rescinded the review with respect to Harmoni and six other companies for which no

other review request remained in place. *Id.* at 13.

Commerce issued its *Final Results* on June 15, 2018. 83 Fed. Reg. 27,949. For

the *Final Results*, Commerce continued to find that the CFTG's review request was

invalid. I&D Mem. at 6. Commerce based its decision on Ms. Sanford's failure to

provide requested information and the "material misrepresentations and inconsistencies

on the record." *Id*. at 24. Commerce also noted that some of the events documented in

Harmoni's AR21 submissions placed on the AR22 record occurred during the AR22

---

[15] Similar to Commerce's regulation, 19 C.F.R. § 351.102(b)(29)(vii), subsection 1677(9)(E) defines "interested party" as "a trade or business association a majority of whose members manufacture, produce, or wholesale a domestic like product in the United States," 19 U.S.C. § 1677(9)(E). To qualify as an interested party pursuant to subsection 1677(9)(E), "a majority of members must have standing within the meaning of [section 1677(9)(C)]" for the association to properly request a review. Prelim. Mem. at 10.

period of review.  *Id*.  Commerce further affirmed its preliminary finding that Mr.

Crawford and Mr. Hume contradicted each other in statements regarding Mr. Crawford's

receipt in 2015 of $50,000 from Mr. Hume's law firm.  *Id*. at 24 & nn.153–55 (citing

CFTG's 8/3/17 Resp., Apps. 5, 16; Harmoni's 8/17/17 Rebuttal, Ex. 37).  Commerce

concluded that neither Mr. Crawford nor Ms. Sanford were credible and, thus, neither

had standing "as individuals or as part of the larger CFTG party."  *Id*. at 24.  Commerce

affirmed its decision to rescind the review with respect to Harmoni and six other

companies.  *Id*.  This appeal followed.  Summons, ECF No. 1.

JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of

1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii)(2012), and 28 U.S.C. § 1581(c).  The

court will uphold an agency determination that is supported by substantial evidence and

otherwise in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

DISCUSSION

**I.    Commerce's Determination that the CFTG's Review Request was Invalid**

Commerce determined that "the CFTG's review request was invalid *ab initio*"

based on its subsidiary findings that neither Mr. Crawford nor Ms. Sanford were

credible.  I&D Mem. at 24.  The CFTG raises several arguments in response to

Commerce's determination, foremost that record evidence demonstrates that CFTG

members are garlic farmers and Commerce impermissibly "structure[d] its analysis as

one of credibility."  CFTG's Mem. at 35–36; *cf*. [Corrected] Reply of [CFTG] and its

Individual Members, in Supp. of Rule 56.2 Mot. for J. on the Agency R. ("CFTG's

Reply") at 4, 7–8, 17–18, ECF No. 75.  The Government contends that "Commerce's

factual findings and credibility determinations are supported by substantial evidence."

Gov't's Resp. at 40.[16]  Harmoni contends that Commerce lawfully disregarded the

CFTG's submissions based on credibility concerns, Harmoni's Resp. at 6, and

Commerce's specific findings were supported by substantial evidence, *id*. at 6–12.

      Commerce "has the inherent authority to defend the integrity of its proceedings in

the first instance while they are ongoing."  *NMGGC CAFC*, 2020 WL 1482402, at *11.

That authority includes disregarding requests for administrative reviews when the

requestor's lack of credibility undermines statements made in the request.  *See id.*

(upholding Commerce's rescission of Harmoni's review in AR21 when credibility

concerns undermined NMGGC's request and all other requests for review of Harmoni

had been withdrawn).  Commerce's credibility-based findings must, however, be

supported by substantial evidence and a reasoned explanation.  *Yangzhou Bestpak*

*Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1378 (Fed. Cir. 2013) (the standard

of review requires Commerce to "examine the record and articulate a satisfactory

explanation for its action").   To that end, the court discusses Commerce's specific

findings as to Mr. Crawford and Ms. Sanford, respectively, before turning to the CFTG's

remaining arguments.

---

[16] The FGPA incorporated by reference the Government's arguments.  FGPA's Resp. at
19.

### A. Commerce's Decision Respecting Mr. Crawford Lacks Substantial Evidence

Commerce based its decision not to credit any of Mr. Crawford's submissions on evidence from AR21 placed on the AR22 record and evidence presented for the first time on the AR22 record.  I&D Mem. at 24.  Commerce's analysis of the AR21 evidence consisted of a single sentence in which the agency noted that "[t]he evidence relied upon in the *Preliminary Results*, some of which was argued and presented in Harmoni's [AR21] Case Briefs, relates to events that took place during the [period of review] for the instant review."  *Id*. at 24.  In a footnote, Commerce pointed to its preliminary observation regarding the existence of "several email communications between 2010 and 2017."  *Id*. at 24 n.152 (quoting Prelim. Mem. at 8).  Elsewhere in the preliminary memorandum, Commerce pointed to "numerous affidavits, declarations, email communications, and narrative submissions" from the AR21 record to support its finding in AR22 "that Mr. Crawford's claims of domestic producer status are unreliable."  Prelim. Mem. at 11 & n.70 (citing, *inter alia*, Harmoni's 8/17/17 Rebuttal).

Commerce's rationale for relying on evidence originally submitted in AR21 for purposes of evaluating Mr. Crawford's credibility in this review appears to consist of the agency's finding that certain email communications—and, perhaps, other "events" first documented in AR21—took place during the AR22 period of review.  Commerce did not, however, identify specific communications or events or explain how they impair Mr. Crawford's credibility in this segment of the proceeding.[17]  Thus, Commerce failed to

---

[17] In the preliminary memorandum, Commerce cited to its final decision memorandum in AR21 to support its reference to certain email communications spanning 2010 to 2017.

"examine the relevant data and articulate a satisfactory explanation" supporting its

decision to disregard Mr. Crawford's information based on this evidence.  *Motor Vehicle*

*Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)

(citation omitted).

　　　　With respect to evidence originating in AR22, Commerce noted a contradiction

between Mr. Hume and Mr. Crawford regarding the existence of a $50,000 payment

from Mr. Hume to Mr. Crawford in March 2015.  I&D Mem. at 24.  While Mr. Hume

acknowledged making the payment in connection with the twentieth administrative

review,[18] Mr. Crawford averred that he "received no remuneration or equipment gratis

during 2015 and 2016."  *Id.* at 24 & n.155 (citing CFTG's 8/3/17 Resp., App. 5).

Commerce does not, however, indicate that Mr. Crawford's apparent misrepresentation

regarding the existence of this payment alone is substantial evidence that his domestic

---

*See* Prelim. Mem. at 8 & n.57 (citing Issues and Decision Mem. for the Final Results of
Antidumping Duty Admin. Review: Fresh Garlic from the [PRC]; 2014-2015 (June 27,
2017) ("AR21 Decision Mem.") at 18–20, *available at* https://enforcement.trade.gov/
frn/summary/prc/2017-12302-1.pdf (last visited Apr. 14, 2020)).  In that decision
memorandum, Commerce reviewed email communications between Mr. Hume and
persons *other than Mr. Crawford*.  AR21 Decision Mem. at 18–20.  The only email
communication corresponding to the AR22 period of review concerned the contents of
the Coalition's review request in AR21.  *Id.* at 19.  Commerce's preliminary
memorandum and citation to its AR21 final decision memorandum thus fail to shed light
on the agency's path of reasoning.
[18] Commerce also noted a contradiction regarding the source of the payment.  While Mr.
Hume stated that he issued the $50,000 payment using funds from his personal bank
account, other record evidence indicated that his law firm was responsible for the
payment.  I&D Mem. at 24 & nn.153-54 (citing CFTG's 8/3/17 Resp., App. 16;
Harmoni's 8/17/17 Rebuttal, Ex. 37).  Commerce did not, however, explain how this
contradiction undermined Mr. Crawford's credibility.

producer claim in this review lacks credibility.  *See id*. at 24 (relying on the entirety of

the "evidence on the record of this proceeding").

Arguments pressed by the Government and Harmoni fail to persuade the court

that Commerce has adequately supported its determination.  The Government relies on

the court's disposition of similar claims in AR21 to support its argument that the court

should reach the same result here.  *See* Gov't Resp. at 40–42 (discussing *NMGGC*,

352 F. Supp. 3d at 1301, 1306–12); *id*. at 42 (stating that "[i]t is no secret that [the]

CFTG is an expansion of the NMGGC's membership") (internal quotation marks and

citation omitted).  However, the standard of review remains the same regardless of

whether similar issues arose in the preceding review; in each review, Commerce's

determination must be supported by substantial evidence.  19 U.S.C.

§ 1516a(b)(1)(B)(i).  In this review of AR22, the court finds that Commerce's

determination respecting Mr. Crawford is not supported by substantial evidence.

The Government also seeks to rely on Commerce's "reference" to a "record

communication between [Mr. Hume] and Messrs. Katz and Crawford linking the current

review to" an alleged plan between Mr. Hume and "his Chinese garlic clients" to obtain a

review of Harmoni.  Gov't Resp. at 47 (citing I&D Mem. at 22).  However, Commerce

only referenced the communication in its recitation of Harmoni's arguments, *see* I&D

Mem. at 22 & n.138 (citation omitted); Commerce did not discuss the communication as

a basis for its decision, *see id.* at 24.  The court cannot sustain an agency determination

based on findings the agency itself did not make. *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168–69 (1962).[19]

Case law relied on by Harmoni and the Government regarding Commerce's disregard of a respondent's data is not persuasive. *See* Harmoni's Resp. at 6 (citing, *inter alia*, *Papierfabrik August Koehler SE v. United States*, 843 F.3d 1373, 1379 (Fed. Cir. 2016); *Ad Hoc Shrimp Trade Action Committee v. United States*, 802 F.3d 1339, 1357 (Fed. Cir. 2015); *Shenzhen Xinboda Indus. Co. v. United States*, Slip Op. 17-160, 2017 WL 6502727, at *18 (CIT Dec. 5, 2017)); Gov't's Resp. at 43 (citing *Jiangsu Changbao Steel Tube Co. v. United States*, 36 CIT 1431, 1442, 884 F. Supp. 2d 1295, 1305 (2012)). In each of the cited cases, the court affirmed Commerce's disregard of a respondent's submissions when the respondent failed to disclose or willfully misrepresented information necessary to Commerce's determination. *See Papierfabrik*, 843 F.3d at 1379 (respondent submitted "fraudulent responses" to Commerce's questionnaires); *Ad Hoc Shrimp*, 802 F.3d at 1356 (respondent failed to disclose and repeatedly misrepresented information "core" to Commerce's determination whether the respondent is entitled to a separate rate); *Xinboda*, 2017 WL 6502727, at *16–18

---

[19] According to the Government, Mr. Crawford's statement that he received no compensation in 2015 is also contradicted by evidence of "remuneration in the form of a partially paid trip to China in July 2015." Gov't's Resp. at 43 (citing *NMGGC*, 352 F. Supp. 3d at 1309). While Commerce pointed to this contradiction in its preliminary memorandum, Prelim. Mem. at 11 & n.75 (citation omitted), the CFTG challenged this finding in its administrative case brief, Case Br. (Apr. 25, 2018) ("CFTG's Case Br.") at 6, CR 178, CJA, and the agency did not restate the finding in its final decision memorandum, *see* I&D Mem. at 24. The court will not infer Commerce's continued reliance on its preliminary finding and, thus, the Government's argument must be disregarded as impermissible *post hoc* rationalization. *See Burlington Truck Lines*, 371 U.S. at 168–69.

(respondent misrepresented data "core" to Commerce's separate rate analysis);

*Jiangsu Changbao*, 36 CIT at 1441–42, 884 F. Supp. 2d at 1305–06  (respondent

engaged in willful omissions, deception, and misrepresentation of evidence at

verification).

      In each case, Commerce properly declined to use any of the respondent's

submitted data when substantial evidence undermined the veracity of the information

necessary to Commerce's margin calculations.  Here, however, Commerce's summary

reliance on evidence submitted in AR21 and a single contradiction regarding a payment

that is not directly related to whether Mr. Crawford is a domestic garlic producer is

insufficient to support Commerce's disregard of Mr. Crawford's evidence of garlic

production.  Accordingly, on remand, Commerce must reconsider and further explain its

basis for questioning Mr. Crawford's credibility in this review to the extent necessary to

determine the CFTG's standing to request an administrative review or it must otherwise

evaluate Mr. Crawford's status as a domestic garlic producer.  *See infra*, Sec. D.

### B.  Commerce's Determination Respecting Ms. Sanford is Supported by Substantial Evidence

      Commerce based its decision not to credit any of Ms. Sanford's submissions on

the CFTG's failure to timely respond to the agency's October 13, 2017 supplemental

questionnaire seeking Ms. Sanford's 2016 income tax returns and related request for an

extension to file those returns and other "material misrepresentations and

inconsistencies on the record."  I&D Mem. at 24 & n.149 (citing Prelim. Mem. at 4;

Commerce 10/13/17 RFI).  Those "misrepresentations and inconsistencies" consist of

Ms. Sanford's statements regarding her reasons for not filing her 2015 tax return and

evidence contradicting her claims that she sold garlic at the Taos, New Mexico farmer's

market in 2016.  Prelim. Mem. at 11–12; *see also* I&D Mem. at 23 & nn.146–47

(referring to "material misrepresentations and inconsistencies" discussed in the

preliminary memorandum) (citing, *inter alia*, Prelim. Mem. at 7, 10-11).

  In its moving brief, the CFTG does not challenge the factual bases underpinning

Commerce's decision to find Ms. Sanford non-credible.  *See generally* CFTG's Mem. at

35–48.  In particular, the CFTG does not rebut the specific evidence Commerce relied

upon to question Ms. Sanford's reasons for failing to file her 2015 tax return or which

contradicted her claims regarding garlic sales at the Taos, New Mexico farmer's market,

or otherwise argue that it is not substantial evidence for the agency's findings.  *See id.*;

Prelim. Mem. at 12 & nn.79, 83 (citations omitted).  Instead, the CFTG argues that

Commerce should have transferred Ms. Sanford's 2016 tax returns from the record of

the twenty-third administrative review to the AR22 record to inform its decision whether

she is a domestic garlic producer.  CFTG's Mem. at 42; *cf.* CFTG's Reply at 9–10

(arguing that Commerce acted in an arbitrary and capricious manner by "ignor[ing]"

evidence on the record of the subsequent review).[20]  Contrary to the CFTG's

arguments, however, it is the responsibility of interested parties—not Commerce—to

build the factual record supporting its position.  *QVD Food Co. v. United States*, 658

F.3d 1318, 1324 (Fed. Cir. 2011).

---

[20] The CFTG also pose certain factual questions for the court's "consideration."  CFTG's Mem. at 42.  To the extent these questions implicate matters outside of the record underlying the court's review, the court does not consider them.

In light of Ms. Sanford's misrepresentations surrounding her inability to submit her 2015 tax returns and her failure to provide Commerce the requested 2016 income tax returns demonstrating garlic farming, Commerce's disregard of Ms. Sanford's claim that she sold garlic at the New Mexico farmer's market on the basis of contradictory evidence is supported by substantial evidence.[21]  In other words, the rationale behind Commerce's conclusion that the absence of the "requested information, [] combined with material misrepresentations and inconsistencies on the record" rendered Ms. Sanford's statements in support of the review request non-credible, I&D Mem. at 24, is "reasonably discernible" to the court, *NMB Singapore Ltd. v. United States*, 557 F.3d 1316, 1319 (Fed. Cir. 2009) (citation omitted).

## C.  The CFTG's Remaining Arguments are Meritless

The CFTG raises various arguments ostensibly supporting its position that it had standing to request an administrative review.  Most are waived for failure to exhaust the arguments at the administrative level or to appropriately develop them in the CFTG's moving brief, and none have merit.

The CFTG first argues that its members have "a Constitutional right to petition Commerce for redress of grievances."  CFTG's Mem. at 38.  The CFTG does not, however, explain why the ability of a domestic interested party to request an

---

[21] It is worth noting, however, that Commerce relied on an affidavit to support its finding that Ms. Sanford was not "recognized by the manager of the [farmer's] market."  Prelim. Mem. at 12.  The affidavit does not state that the investigator asked the manager if she recognized Ms. Sanford or showed the manager Ms. Sanford's picture.  *See* Harmoni's 8/17/17 Rebuttal, Ex. 27.  Nevertheless, the absence of evidence supporting this specific finding does not undermine Commerce's determination regarding Ms. Sanford.

administrative review of a foreign garlic producer has constitutional dimensions or how

this right was abridged beyond its disagreement with Commerce's conclusion that the

CFTG did not meet legal standing requirements.  It is well-settled that undeveloped

arguments, such as this one, are "deemed waived."  *United States v. Great Am. Ins. Co.*

*of New York* ("*GAIC*"), 738 F.3d 1320, 1328 (Fed. Cir. 2013).[22]

        Second, the CFTG argues that Commerce violated 19 U.S.C. § 1677m(d) and (e)

when it rejected 29 of the CFTG's submissions, highlighting "three . . . rejections" as

"particularly egregious."  CFTG's Mem. at 38–40.  The highlighted rejections consist of:

(1) the CFTG's submission of Ms. Sanford's 2016 returns; (2) three attempts to submit

information rebutting an allegation that Mr. Hume perjured himself in connection with the

source of the $50,000 payment to Mr. Crawford; and (3) a letter dated December 28,

2017 and resubmitted on February 22, 2018.  *Id.* at 39–40.  Commerce rejected the

submissions as containing untimely new factual information.  Rejection of CFTG's

---

[22] To the extent the CFTG seeks to develop this argument in its reply brief, *see* CFTG's Reply at 3–9 (raising arguments concerning Commerce's finding that Ms. Sanford's stated reasons for not filing her 2015 tax returns were not credible and the agency's reliance on the investigator's affidavit in the context of the agency's purported denial of Ms. Sanford's due process rights); *id.* at 13 (arguing that Commerce's reliance on AR21 evidence constituted a denial of Mr. Crawford's due process rights), it relies on arguments that it did not present to the agency and otherwise waived for failure to develop those arguments in its moving brief.  28 U.S.C. § 2637(d) (providing that the CIT "shall, where appropriate, require the exhaustion of administrative remedies"); *Weishan Hongda Aquatic Food Co. v. United States*, 917 F.3d 1353, 1362 (Fed. Cir. 2019) ("[Subsection 2637(d)] indicates a congressional intent that, absent a strong contrary reason, the [CIT] should insist that parties exhaust their remedies before the pertinent administrative agencies.") (citation omitted); *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1375 n.4 (Fed. Cir. 2005) (declining to consider an argument inappropriately raised in a footnote in an opening brief that was more fully developed in a reply brief).  Accordingly, the court will not consider them.

Unsolicited New Factual Information (Nov. 9, 2017), PR 301, PJA Vol. IV (in reference

to (1) above); Reject and Delete Unsolicited New Factual Information (Dec. 29, 2017),

PR 332, PJA Vol. IV (in reference to (2) above); Rejecting CFTG's Jan. 3, 2018

Submission (Feb. 15, 2018), PR 376, PJA Vol. V (same); Rejecting CFTG's Untimely

Submissions (Apr. 13, 2018), PR 410, PJA Vol. V (in reference to (2) and (3) above);

Rejecting CFTG's 12/28/17 Submission (Feb. 15, 2018), PR 375, PJA Vol. V (in

reference to (3) above).

    The CFTG did not challenge Commerce's decisions to reject the submissions in

its administrative case brief, CFTG's Case Br. at 15–21, which should have included all

arguments that the CFTG considered relevant to Commerce's *Final Results*, *i.e.*, the

decision subject to judicial review, 19 U.S.C. § 1516a(a)(2)(B)(iii); 19 C.F.R.

§ 351.309(c)(2).  Accordingly, the CFTG failed to exhaust its administrative remedies in

connection with this challenge.  *Weishan Hongda*, 917 F.3d at 1362.[23]

    Third, the CFTG argues that Commerce impermissibly "fail[ed] to ask questions

and to afford [Mr.] Crawford an opportunity to resolve conflicting claims."  CFTG's Mem.

at 40.  The CFTG does not substantiate this argument with legal authority and, instead,

---

[23] Even if the court were to review Commerce's interim administrative decisions, it is
well-settled that Commerce "must be permitted to enforce the time frame provided in its
regulations."  *Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1351
(Fed. Cir. 2015) (citation omitted) (upholding Commerce's decision to reject an untimely
submission accompanied by an untimely request for an extension of time).  While the
CFTG summarily notes that its "resubmissions contained answers to the points initially
raised by Commerce for the rejection[s]" and "should have qualified" for acceptance,
CFTG's Mem. at 40, it does not explain why Commerce erred in rejecting the
submissions as containing untimely new factual information.  Accordingly, the CFTG
has also waived this argument for failure to appropriately develop it.  *GAIC*, 738 F.3d at
1328.

offers its interpretation of the evidence. *See id.* at 41. Moreover, Commerce's

regulations afforded the CFTG the opportunity to resolve any conflicts through the

timely submission of rebuttal information. 19 C.F.R. § 351.301(c)(1)(v). The CFTG

cannot now complain when it failed to do so.

Fourth, the CFTG argues that "Commerce failed to examine contradictions and

inconsistencies" stemming from AR21 and relevant to statements made by Mr. Katz in

that segment of the proceeding. CFTG's Mem. at 42–43 (citing AR21 Decision Mem. at

23). As previously noted, Mr. Katz did not respond to Commerce's standing

questionnaire and, thus, Commerce had no reason or basis in which to evaluate his

credibility in AR22. Prelim. Mem. at 10. The CFTG also avers that Commerce

assumes that Mr. Crawford's $50,000 payment was funded from "Chinese sources," but

the source of the funds was not a basis for Commerce's decision here. CFTG's Mem.

at 43.

Fifth, the CFTG argues that none of the CFTG members expected to be paid for

their participation in AR22 and point to evidence of Ms. Sanford's and Ms. Bateman's

statements in that regard. *Id.* at 43–44 (citations omitted). Commerce did not make

contrary findings regarding Ms. Sanford and Ms. Bateman's credibility is not at issue.

Sixth, the CFTG argues that Harmoni interfered with the CFTG, pointing

specifically to statements allegedly made by Mr. Katz's wife, Kristen Davenport.

CFTG's Mem. at 44–46. Ms. Davenport's alleged statements are not relevant to

Commerce's credibility determinations regarding Mr. Crawford and Ms. Sanford.

Seventh, the CFTG relies on *Albemarle Corp. & Subsidiaries v. United States*, 821 F.3d 1345, 1356–57 (Fed. Cir. 2016), to support its position that Commerce impermissibly relied on information that originated outside of the AR22 period of review. CFTG's Mem. at 47; *cf.* CFTG's Reply at 14.  In *Albemarle*, the Federal Circuit remanded Commerce's assignment of a prior calculated dumping margin to a now-separate-rate respondent in a subsequent review.  821 F.3d at 1350, 1355–56.  In that context, the appellate court explained that Commerce erred in selecting the prior rate simply because it was "temporally proximate" when record evidence indicated an overall decline in dumping margins and the respondent was not non-cooperative such that Commerce could reasonably infer that a previous, higher margin was probative of current dumping.  *Id.* at 1357.  While *Albemarle* is largely inapposite, it is consistent with the court's conclusion here that Commerce must do more to explain the continued relevance of AR21 evidence to its determination that Mr. Crawford lacks credibility in AR22.  *Albemarle* does not, however, suggest that Commerce is barred from considering prior events for purposes of examining credibility in this review.

Finally, the CFTG argues that Commerce erred in disregarding the relevance of Ms. Bateman to its standing analysis.  CFTG's Reply at 22.  The CFTG failed to exhaust this argument before the agency and further waived it by raising the argument to the court for the first time in its reply brief.  *Weishan Hongda*, 917 F.3d at 1362; *Fuji Photo Film*, 394 F.3d at 1375 n.4.

### D.  Commerce's Partial Rescission of the Administrative Review

The propriety of Commerce's partial rescission of the review turns on the

reasonableness of the agency's decision to invalidate the CFTG's review request.

Standing as an association pursuant to 19 U.S.C. § 1677(9)(E) requires a majority of

the CFTG's members to have standing as individuals pursuant to 19 U.S.C.

§ 1677(9)(C), i.e., as domestic garlic producers.  Prelim. Mem. at 10.  Mr. Katz and Mr.

Pino did not respond to Commerce's questionnaire.  *Id.* at 13.  As discussed,

Commerce's credibility determination regarding Ms. Sanford is supported by substantial

evidence and the agency's credibility determination as to Mr. Crawford is being

remanded for further explanation or reconsideration.  Thus, while Commerce's

determination that at least three of the four members of the CFTG, at the time of the

review request, did not credibly establish that they qualified as domestic producers is

supported by substantial evidence, the court is unable to affirm the agency's

determination that the review request was invalid *ab initio*.

In its determination, Commerce declined to make an express finding as to

whether the CFTG submitted the review request as an association only or also on

behalf of its individual members.[24]  Accordingly, on remand, Commerce may decide to

---

[24] The first sentence of the CFTG's review request indicates that the request is on behalf of the CFTG as "an alliance of domestic garlic producers," and the certification of the submission is on behalf of the CFTG.  CFTG Req. at 1–3 & Co. Certification. However, as Commerce notes, in describing the members of the CFTG, the CFTG references both 19 U.S.C. § 1677(9)(C) (individual standing) and 19 C.F.R. § 351.102(b)(19)(vii) (association standing).  *Id.*; Prelim. Mem. at 10.  Rather than resolving this question, Commerce found that the review request was invalid regardless of whether the request was made on behalf of the CFTG as an association or on behalf of its individual members.  Prelim. Mem. at 13; I&D Mem. at 23–24.

reach this issue in addition to, or in lieu of, its reconsideration of Mr. Crawford's

credibility and status.

## II.    The CFTG's Challenge to 19 C.F.R. § 351.213(d)(1)

The CFTG contends that Commerce's regulatory provision governing the

rescission of administrative reviews upon the withdrawal of a review request, 19 C.F.R.

§ 351.213(d)(1), violates 19 U.S.C. § 1675(a)(1)–(2), which the CFTG contends does

not permit a partial review limited to certain exporters and producers.  CFTG's Mem. at

25–26, 30–35.  According to the CFTG, once a review is initiated, Commerce must

"determine the amount of any antidumping duty for *each entry* of the subject

merchandise."  *Id.* at 31 (emphasis added).

The court addressed substantially identical arguments regarding Commerce's

rescission policy in its opinion resolving challenges to AR21 and affirmed Commerce's

ability to limit its reviews to named companies and to rescind reviews of specific

companies when all requests have been withdrawn.  *See NMGGC*, 352 F. Supp. 3d at

1302–06.[25]  The CFTG offers no new arguments to persuade the court to conclude

otherwise in this case.[26]

---

[25] The court recognized that although the Coalition had not withdrawn its request for
review of Harmoni, it led with the argument that 19 C.F.R. § 351.213(d) violated 19
U.S.C. § 1675(a)(1)–(2).  *NMGGC*, 352 F. Supp. 3d at 1303 n.32.  So too here, the
CFTG did not withdraw its request for review of Harmoni.  Nevertheless, the CFTG
challenges Commerce's regulation "as it relates to withdrawals of review requests."
CFTG's Mem. at 15.
[26] To the extent the CFTG seeks to reframe its appeal in its reply as a challenge to
Commerce's interpretation of its own regulation, *see* CFTG's Reply at 18–22, as distinct
from its challenge to 19 C.F.R. § 351.213(d)(1) as an impermissible interpretation of 19
U.S.C. § 1675(a) pursuant to *Chevron, U.S.A., Inc. v. Natural Resources Defense
Council, Inc.*, 467 U.S. 837, 842–45 (1984), *see* CFTG's Mem. at 15–17, 26, 31–32, the

Nevertheless, in *NMGGC CAFC*, the Federal Circuit explained that judicial review pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) is available only to "an interested party *who is a party to the proceeding in connection with which the matter arises*."  2020 WL 1482402, at *12 (quoting 19 U.S.C. § 1516a(a)(2)(A)) (emphasis in the opinion). The appellate court further concluded that the invalidity of the Coalition's review request rendered the Coalition's "participation in AR21 . . . null and void" such that the Coalition "was not a 'party to the proceeding'" eligible to challenge Commerce's regulation.  *Id.* at *13.  The court is guided by the Federal Circuit's opinion in this regard and, thus, declines to opine further on these issues, absent any need to address them following the agency's remand determination.

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby:

**ORDERED** that Commerce's *Final Results* are remanded to the agency; it is further

**ORDERED** that, on remand, Commerce shall, consistent with this opinion, reconsider or further explain its credibility determination regarding Mr. Crawford; it is further

**ORDERED** that, on remand, Commerce may make findings as to whether the CFTG requested an administrative review as an association only or also on behalf of its individual members; it is further

---

CFTG did not present that argument to the agency and has otherwise waived it. *Weishan Hongda*, 917 F.3d at 1362; *Fuji Photo Film*, 394 F.3d at 1375 n.4.

Court No. 18-00137                                                    Page 28

      **ORDERED** that Commerce shall file its remand results on or before July 13,

2020; it is further

      **ORDERED** that subsequent proceedings shall be governed by USCIT Rule

56.2(h); and it is further

      **ORDERED** that any comments or responsive comments must not exceed 5,000

words.


                          /s/      Mark A. Barnett
                          Mark A. Barnett, Judge

Dated: April 14, 2020
          New York, New York